# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED

APR 2 5 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| INFORMATION ASSOCIATED WITH | ) |
| canuseeme57@icloud.com, only1daddy4u@icloud.com, | ) |
| and ognunes100@icloud.com THAT IS STORED AT | ) |
| PREMISES CONTROLLED BY Apple, Inc. | ) |

Case No.

2: 1 9 - SW - 3 5 5    CKD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC Section 1344 | [Bank Fraud] |
| 18 USC Section 1028A | [Aggravated Identity Theft] |
| 18 USC Section 1956 | [Money Laundering] |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Laura E. Giouzelis
Federal Bureau of Investigations
*Printed name and title*

Sworn to before me and signed in my presence.
Date: 4/25/2019

City and state:  Sacramento, California

*Judge's signature*

~~Kendall J. Newman, U.S. Magistrate Judge~~
*Printed name and title*
**Carolyn K. Delaney**
**U.S. Magistrate Judge**

1  McGREGOR W. SCOTT
   United States Attorney
2  ROBERT J. ARTUZ
   Special Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8                IN THE UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 | In the Matter of the Search of:          | CASE NO.

12 | INFORMATION ASSOCIATED WITH              | AFFIDAVIT IN SUPPORT OF AN APPLICATION
   | canuseeme57@icloud.com,                   | FOR A SEARCH WARRANT
13 | only1daddy4u@icloud.com, and
   | ognunes100@icloud.com THAT IS STORED
14 | AT PREMISES CONTROLLED BY Apple,
15 | Inc.

16

17 I, Laura E. Giouzelis, being first duly sworn, herby depose and state as follows:

18                **I.     INTRODUCTION AND AGENT BACKGROUND**

19        1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§

20 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the

21 government records and other information, including the contents of communications, associated with

22 the above-listed Apple ID that is stored at premises owned, maintained, controlled, or operated by

23 Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA. The information to be disclosed by

24 Apple and searched by the government is described in the following paragraphs and in Attachments A

25 and B.

26        2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so

27 employed for eight years. I am currently assigned to the Sacramento Field Office where I investigate

28 fraud and organized crime. My training and experience includes a seventeen-week basic training course

AFFIDAVIT                                        1

1  at the FBI Academy and supplemental training in terrorism, fraud, and the development and operation of
2  confidential sources. I have participated in the several investigations involving bank fraud, wire fraud,
3  aggravated identity theft, and money laundering.

4      3.      The facts in this affidavit are based on my personal observations, my training and
5  experience, and information obtained from other agents and witnesses. This affidavit is intended to
6  show merely that there is sufficient probable cause for the requested warrant and does not set forth all of
7  my knowledge about this matter.

8      4.      FBI and the California Regional Enforcement Allied Computer Team (REACT) Task
9  Force conducted much of the investigation described below. REACT is a partnership of California
10  local, state, and federal agencies formed in cooperation with private industry to investigate technological
11  crime. REACT conducts multi-jurisdictional investigations including stolen high technology, identity
12  theft, and other computer related crimes.

13      5.      Based on the facts set forth in this affidavit, there is probable cause to believe that
14  Jonathon WARD (aka Johnathon WARD) and Monica NUNES committed acts in violation of 18 U.S.C.
15  §§ 1344 (bank fraud), 1028A (aggravated identity theft), and 1956 (money laundering) in the Eastern
16  District of California and elsewhere. There is also probable cause to search the information described in
17  Attachment A for evidence of these crimes and further described in Attachment B.

18  ## II.    __JURISDICTION__

19      6.      This Court has jurisdiction to issue the requested warrant because it is "a court of
20  competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the
21  United States … that-has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

22  ## III.    __PROBABLE CAUSE__

23  ### The Criminal Acts

24      7.      This investigation has shown that WARD, NUNES, and others yet to be named, acquired
25  "Point of Sale" (POS) terminals by either purchase or theft and manipulated them to make fraudulent
26  merchant refunds starting at least as early as June 1, 2018, and continuing until on or about February 1,
27  2019. This investigated bank fraud scheme is referred to as "Forced Post Refund Fraud" or "Refund
28  Fraud". The scheme exploits the refund process of the merchant accounts of various banks and payment

processors.  A merchant account is a type of bank account that allows businesses to accept payments via multiple electronic methods, typically using debit and credit cards ("access cards").  Such an account is established under an agreement between a merchant (e.g., a retail establishment) and a merchant acquiring bank for the settlement of access card transactions.  The acquiring bank processes credit or debit card payments on behalf of the merchant.

8.     When a legitimate business wants to accept access cards as payment for merchandise or services, they open a merchant account with an acquiring bank to manage funds and process credit and debit transactions.  For example, when a merchant makes a sale and accepts payment via an access card, they enter the amount of the sale and then "swipe" the access card on a POS terminal.  The terminal reads the magnetic stripe on the rear of the access card and processes the purchase by electronically transmitting a request to initiate a transfer of funds from the access card holder's account to the merchant's account.  This transaction is completed by a bank directly or via a payment processor over phone lines or the internet.

9.     Although some acquiring banks act as their own processor to process payment and refund transactions involving access cards, others employ a specific payment processing company ("payment processor") to process the payments and refunds for them.  A payment processor can be appointed by a merchant to handle transactions from various channels such as credit and debit cards for the merchant acquiring banks.

10.    In general, when a payment processor is used to process card transactions, the merchant's POS terminal transmits a merchant ID number and other information to the payment processor indicating that the transaction is legitimate.  In an operation that will usually take a few seconds, the payment processor will check the transmission data by forwarding it to the respective access card's issuing bank or card association (e.g., Visa) for verification.  Once the payment processor has received confirmation that the credit card details are verified, the information will be relayed back via a payment gateway to the merchant, who will then complete the payment transaction.  The funds are then transferred from the purchaser's/access card user's account and deposited into the merchant's account.

11.    Similarly, when a merchant requests a refund of a purchase they again swipe the purchaser's access card at the POS terminal and enter the refund amount.  The POS terminal reads the

1  magnetic strip on the rear of the access card and processes the refund.  The refund amount is then
2  deducted from the merchant's account and credited to the access card's account.

3      12.    Using one or more POS terminals that were reprogrammed with new merchant account
4  information, WARD and NUNES executed fraudulent refunds, even though no purchases were ever
5  made.  During this fraudulent refund process, the payment processor or bank, believing that the
6  transmitted request for refunds came from the true merchant(s), transmitted false refund money to the
7  access card account.  WARD and NUNES then depleted the access card by using it to make purchases,
8  ATM cash withdrawals, and money order purchases.  These fraudulent refunds resulted in losses to the
9  banks holding the merchant accounts.  The victim merchants likely did not realize the funds were
10  withdrawn until they checked their bank statements, which may have taken days or even weeks.  By that
11  time, the money had been transferred from the merchant bank account to the access card accounts and
12  often removed from the card accounts via subsequent purchase or transfer.

13      13.    Matsuda's Nursery is a business located at 10600 Florin Road, Sacramento, California, in
14  the Eastern District of California whose merchant payment processor is also Worldpay/Vantiv.  WARD
15  and NUNES were never employed by that business.  Additionally, the hours of operation for Matsuda's
16  are Monday through Friday, 7:00 am through 4:30 pm.  Matsuda's was identified as a victim of this
17  fraud.  Matsuda's merchant account is with Wells Fargo, a bank that is FDIC insured.

18      14.    Instant Storage is a business located at 301 State Road, Bakersfield, California, in the
19  Eastern District of California whose merchant payment processor is also Worldpay/Vantiv.  WARD and
20  NUNES were never employed by Instant Storage.  Additionally, the hours of operation for Instant
21  Storage are Monday through Friday, 8:00 am through 5:00 pm.  Instant Storage was identified as a
22  victim of this fraud.  Instant Storage's merchant account is with Bank of America, a bank that is FDIC
23  insured.

24      15.    In July 2018, REACT investigators were investigating WARD and NUNES after
25  identifying them as participants in this bank fraud scheme against at least Instant Storage as discussed
26  herein.  REACT investigators knew that the suspects often conducted refund fraud from various hotels.
27  Based on my experience and discussions with other law enforcement personnel, criminals often conduct
28  fraud schemes from hotels to hide their true identities and the location of incriminating evidence.  On

1  September 21, 2018, REACT investigators obtained a federal search warrant to track a mobile device
2  having phone number 415-516-7613, which was a phone number associated with WARD. On October
3  12, 2018, REACT investigators tracked WARD and NUNES to a Pleasanton Marriot, located at 11950
4  Dublin Canyon Road, Pleasanton, California. At that time, the REACT investigators knew that both
5  WARD and NUNES were on searchable probation, and they suspected that WARD and NUNES were
6  involved in Refund Fraud. REACT officers then contacted WARD and NUNES in and around
7  WARD's vehicle, a Black Cadillac Escalade, in the parking lot of the Pleasanton Marriot, and conducted
8  a search of the Cadillac.

9      16.    During the Cadillac search, officers found a loaded handgun and a personal use amount
10  of methamphetamine. Both WARD and NUNES were convicted felons, and officers arrested them that
11  day on gun and drug charges. REACT officers also located and seized multiple access cards and
12  WARD's and NUNES' cellular phones from the Cadillac. Additionally, WARD had the following
13  items in his wallet at the time of his arrest (the list is not exhaustive):

14      a)    A Key Bank debit card ending x2088 and having the name "Jonathon Ward"; and

15      b)    A PayPal card ending x8910 and embossed with the name "Jonathon Ward".

16      17.    NUNES had the following item (among other items of evidentiary value) in her purse at
17  the time of her arrest: a receipt dated October 12, 2018 showing the purchase of $50.00 worth of credits
18  from a Recharge Kiosk at Boomers (miniature golf/go karts) in Livermore purchased with PayPal card
19  ending x8910.

20      18.    An analysis of historic location information for this WARD's phone also showed that he
21  was located at in Rancho Cordova, California, on October 1 through October 3, 2018. WorldPay/Vantiv
22  records show that, during that same timeframe, WARD and NUNES were executing fraudulent refunds
23  that targeted Matsuda's Wells Fargo merchant account.

24      19.    REACT investigators learned that WARD and NUNES had directed the relocation of
25  specific items of evidence and contraband to 3150 Mills Drive, Brentwood, California, to avoid law
26  enforcement detection and seizure, which was the residence of WARD's sister. Investigators then
27  obtained a state search warrant to search that residence and executed the search on October 17, 2018.
28  Among the items seized at the residence were:

a)    Nine POS terminals;

b)    A Wells Fargo debit card ending x7922 and having the name Monica Nunes;

c)    A handwritten note detailing a script for a conversation to Mercury Payments regarding a JW Rentals account at Paypal;

d)    Nine Blank access cards, one of which had the name of "Johnathon Ward" on the magstripe;[1]

e)    A handwritten note on mail addressed to WARD's sister stating, "$1,000 Shut off card have card mailed – PayPal – JW rentals Gmail.com". "erase all files delete all emails". "Call Apple delete everything?? Delete". "canusmee57 Icloud.com Johah143$".

20.    Based on my training, experience and discussions with other law enforcement officers, criminals will call others to have them delete e-mails and internet cloud storage accounts to attempt to dispose of evidence of crimes. I believe the canusmee57 was an error in transcription and the correct iCloud account was canuseeme57@icloud.com.

21.    On February 1, 2019, WARD was arrested in Reno, Nevada, by Reno Police Department for possession of methamphetamine. NUNES was also present and arrested for violating probation terms imposed after the October 12, 2018 arrest in Pleasanton, California. At the time of WARD's arrest, he possessed access cards that investigators determined were used to accept fraudulent refunds. Additionally, he was in possession of a point of sale terminal that was used to download fraudulent refunds. On February 15, 2019, WARD was arrested in Salt Lake City, Utah, on an outstanding warrant for a probation violation stemming from his arrest in Reno, Nevada. While in custody, at Salt Lake City Sheriff's Department, on February 15, 2019, WARD made a call to a co-conspirator/schemer. This call was recorded. During the phone call, WARD asked a co-conspirator to have someone delete his iCloud account. Over the phone, WARD provided the coconspirator with the account name, only1daddy4u@icloud.com, and password. In subsequent phone calls from Salt Lake City Sheriff's Department WARD continued to ask if the account had been deleted. Based on my training and

---

[1] This card was a blank, i.e., it had no markings on it and only a magstripe affixed to it. The card number and the name information were gleaned from the encoded magstripe and subsequently verified by Metropolitan Commercial Bank. Based on my training and experience, criminals use blank access cards to encode credit/debit account information for facilitating fraud schemes.

1   experience, WARD's continued inquires of the status of the only1daddy4u@icloud.com account show
2   probable cause the account contains evidence or fruits of fraud.

3       22.    Following the October 12, 2018, arrest, REACT Investigators obtained a search warrant
4   for the contents of the phone collected from NUNES. The examination of the phone revealed the phone
5   was named "Monica's iPhone". The phone has two different e-mail accounts linked as user names for
6   Apple ID. The e-mail addresses are canucmee57@icloud.com and ognunes100@icloud.com. An
7   iCloud account allows for the use of messaging through iMessage, an Apple specific text message
8   service, as well as email communications. According to the records on NUNES' phone,
9   ognunes100@icloud.com was created as the user name to access "CloudKit" from her phone. Based on
10  my training, experience, and public information, I understand that this information suggests that the
11  ognunes100@icloud.com account was created and had the ability to save a copy of the NUNES' phone
12  through Apple's cloud servers. According to the records on the phone, account
13  ognunes100@icloud.com was established on September 19, 2018, as the user name on the iPhone.
14  Additionally, on September 29, 2018, ognunes100@icloud.com had contact through e-mail with account
15  jwrentals@gmail.com.

16      23.    Agents analyzed records from PayPal for an account with business name JW Rentals
17  (hereafter, the JW Rentals PayPal Account) created on July 15, 2018. The JW Rentals account was
18  registered with user name "JOHNATHON WARD", WARD's date of birth, WARD's social security
19  number, and physical addresses associated with WARD. The JW Rentals PayPal account listed e-mail
20  addresses still2theleft@gmail.com and jwrentals415@gmail.com as associated e-mail addresses. The
21  JW Rentals PayPal account showed the account received money from a known coconspirator or co-
22  schemer on September 7, 2018. Additionally, the JW Rentals PayPal Account contained records of
23  items purchased and delivered to Jonathon Ward at 3150 Mills Drive, Brentwood, California including a
24  World Payment Terminals VeriFone VX520, purchased on July 15, 2018. Based on my experience, to
25  conduct this type of fraud, credit card terminals are needed. E-mails sent from PayPal to the e-mails
26  listed on the PayPal account would list further detail regarding the transactions listed in the PayPal
27  records. Based on my experience and discussion with other law enforcement officers, PayPal will send
28  information about customer's accounts to the customer's e-mail on file. Criminals involved in

1   fraudulent activity will use an e-mail they control to register PayPal accounts and other financial
2   institutions so they can monitor the fraudulent activities.  There exists probable cause to believe there
3   will be evidence of fraud including communication from PayPal financial institutions in the e-mail
4   accounts jwretnals415@gmail.com and still2theleft@gmail.com.

5       24.     On July 9, 2018, WARD opened Key Bank account x6537 associated with debit card
6   x2088 in a Key Bank in Salt Lake City, Utah.  On July 15, 2018, multiple fraudulent refunds were
7   loaded onto Key Bank debit card x2088 (found in WARD's wallet at the time of his October 12, 2018,
8   arrest) from the Instant Storage account.  Worldpay records show that this access to Instant Storage's
9   account occurred through their system via the Internet between July 15, 2018 and July 16, 2018, using
10  IP address 40.129.186.144.  According to open source records, IP address 40.129.186.144 is leased to
11  The Residence Inn located at 1000 Airway Boulevard, Livermore, California.  The Assistant Manager
12  for The Residence Inn provided REACT agents with a copy of the registry for the dates of July 15–16,
13  2018.  The registry listed WARD as having checked into the Residence Inn between July 14 and July 16,
14  2018.  The Assistant Manager also provided REACT Agents with security surveillance video showing
15  WARD in the hotel on July 16, 2018.  The Assistant Manager told REACT agents that the emails
16  still2theleft@gmail.com and ognunes100@gmail.com were provided to the Residence Inn at the time of
17  check-in.

18      25.     Open source records, including social media, information associates
19  ognunes100@gmail.com with NUNES and still2theleft@gmail.com with WARD.

20      26.     Fairfield Police Department reported Fairfield resident, Victim 1, had property stolen
21  from his vehicle on or about August 1, 2018.  Victim 1 told REACT Investigators his wallet and social
22  security card were stolen from a vehicle.  A review of information obtained from WARD's smartphone,
23  shows that he used Victim 1's name while communicating with Heartland Payment Systems on August
24  27, 2018, through the email address of jwrentals415@gmail.com.  Heartland Payment Systems is owned
25  by Global Payments merchant processing services.  Records show Heartland Payment is a victim in
26  fraud scheme executed by WARD and NUNES.

27      27.     According to records received from PayPal, on December 13, 2018, a PayPal account
28  was opened in the name of Victim 1 using his/her true date of birth and social security number, credit

1   card statement name JWRENTAL41, and e-mail jwrentals415@gmail.com.  Based on further

2   information obtained from PayPal, identity information is confirmed by PayPal, so a true identity must

3   have been be used to open this PayPal account.  Based on my training, experience, and discussions with

4   other law enforcement officers, criminals involved with online fraud and money transfers will open

5   accounts in stolen and others identities to evade law enforcement detection of the criminal's identity.

6   Accordingly, based on my training and experience, there is probable cause to believe that WARD and

7   NUNES are involved in using stolen identities to facilitate their Refund Fraud scheme.

8       28.     Based on my training experience and discussions with other law enforcement officers,

9   criminals involved in fraud may create fake businesses to transfer funds into and through the fake

10  business account to conceal the true nature of the funds from law enforcement.  According to PayPal

11  Records, an account with business name JW Rentals was created on July 15, 2018, with user name

12  JOHNATHON WARD and the following associated e-mail addresses: still2theleft@gmail.com and

13  jwrentals415@gmail.com.  Based a review of information obtained from PayPal, emails containing fake

14  invoices were sent from the JW Rentals PayPal Account to co-conspirators/schemers.  A further review

15  of these records shows that the co-conspirators/schemers paid the invoices with the money obtained

16  through the Refund Fraud.  The purpose of this PayPal Account is to disguise the true nature of the

17  fraudulently obtained money.  Based on my training and experience, there is probable cause to believe

18  that WARD and NUNES were coordinating these PayPal transactions in an effort to launder the

19  proceeds of their fraud scheme.

20              **Probable Cause the Accounts to be Searched Contain Evidence of a Crime**

21      29.     During the execution of the Instant Storage refund fraud associated with card x2088,

22  WARD associated himself with the e-mail addresses ognunes100@gmail.com and

23  still2theleft@gmail.com.  WARD used the e-mail address still2theleft@gmail.com with his JW Rentals

24  PayPal account.  Based on my experience and discussion with other law enforcement officers, criminals

25  involved with online fraud will use e-mail addresses to receive information from real businesses,

26  including banks, about their fraud.  They will also use e-mail to send messages between co-conspirators

27  including sharing the messages from the real businesses as evidence of the fraud.

28      30.     A review of the records provided by PayPal associated with JW Rentals shows three

1  transactions between JW Rentals using jwrentals415@gmail.com and the account
2  canuseeme57@icloud.com:

    a)   An invoice sent on September 7, 2018, at approximately 12:00 am from
         jwrentals415@gmail.com to canuseeme57@icloud.com for $500.05;

    b)   A payment from canuseeme57@icloud.com to jwrentals415@gmail.com for
         $500.05 on September 7, 2018, at approximately 2:54 am; and

    c)   A payment from canuseeme57@icloud.com to jwrentals415@gmail.com for
         $495.03 on September 7, 2018, at approximately 2:57 am.

Based on my training experience and discussions with other law enforcement officers, criminals involved in fraud may create fake businesses to transfer funds into and through the fake business account to conceal the true nature of the funds from law enforcement. The e-mail from JW Rentals was sent to the canuseeme57@icloud.com account with an attached invoice. The purpose of this invoice was to transfer the fraudulent funds into Ward's JW Rentals PayPal Account and disguise the true nature of the payment. The payment was disguised as a payment of goods or services instead of transference of funds from fraud.

31.   Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe WARD, NUNES, and others engaged in, and continue to engage in, a bank fraud scheme, identity theft, and money laundering. Particularly, as described above, there is probable cause to believe that these subjects engaged in a Refund Fraud scheme and used the following email addresses to execute and facilitate these crimes: canuseeme57@icloud.com, only1daddy4u@icloud.com, and ognunes100@icloud.com (collectively, the "target accounts"). There is probable cause to believe that not only the contents of email communications but also the contents of other documents, files, and data associated with the corresponding Apple ID(s) will contain evidence of the scheme described in this affidavit.

32.   The stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

33.     For example, there is probable cause to believe that iMessages and instant messages connected to the Apple ID(s) contain evidence of the scheme described in this affidavit.  When an iPhone user such as WARD or NUNES communicates with another phone number using the iPhone's default messaging app, Apple automatically recognizes whether or not the other number is also an Apple device (e.g. iPhone, iPad, iPod, etc.).  If both phone numbers are Apple devices, the two devices will communicate via iMessages, not via SMS text messages.  Unless an iPhone user alters their phone's default settings, it is inevitable for an iPhone user to send and receive iMessages because their iPhone will generally automatically send an iMessage in lieu of a text message whenever the user exchanges messages with another iPhone user.

34.     Since iMessages are not text messages, they do not appear on toll records from the cellular carrier.  Therefore, since WARD or NUNES is also an iPhone user, messages sent between them using the default messaging app on their respective iPhones will be sent and received as iMessages, not SMS messages, and thus will not appear on toll records.

35.     There is probable cause to believe that photographs and videos will evidence WARD and NUNES' relationship to each other and other coconspirators, or may evidence their location(s) at a given date and time.  In particular, smartphones commonly embed location information into photographs taken using the phone's camera.  This feature, known as geotagging, identifies where the phone was located when the photo was taken.  Furthermore, in my training and experience, a photograph taken and shared with a mobile phone provides a convenient, efficient means to share information related to the conspiracy such as victims' personally identifiable information, drop account information, and information about the conspirators' bank accounts.

36.     There is probable cause to believe that Internet browsing history and bookmarks stored in the iCloud accounts will provide a range of evidence regarding his involvement in the scheme described in this affidavit.  For example, browsing history may document occasions when Ross accessed the drop accounts via the internet or conducted other activity in furtherance of the conspiracy or scheme.

37.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the various files and records described in this affidavit.  This evidence may establish the "who, what, why, when, where,

1   and how" of the criminal conduct under investigation, thus enabling the United States to establish and

2   prove each element or, alternatively, to exclude the innocent from further suspicion.

3       38.     In addition, the user's account activity, logs, stored electronic communications, and other

4   data retained by Apple can indicate who has used or controlled the account. This "user attribution"

5   evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

6   residence. For example, subscriber information, email and messaging logs, documents, and photos and

7   videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence

8   of who used or controlled the account at a relevant time. As an example, because every device has

9   unique hardware and software identifiers, and because every device that connects to the Internet must

10  use an IP address, IP address and device identifier information can help to identify which computers or

11  other devices were used to access the account. Such information also allows investigators to understand

12  the geographic and chronological context of access, use, and events relating to the crime under

13  investigation.

14      39.     There is probable cause to believe that account activity will also provide relevant insight

15  into the account owner's state of mind as it relates to the offenses under investigation. For example,

16  information on the account may indicate the owner's motive and intent to commit a crime (e.g.,

17  information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account

18  information in an effort to conceal evidence from law enforcement).

19      40.     Therefore, Apple's servers are likely to contain stored electronic communications and

20  information concerning subscribers and their use of Apple's services. In my training and experience,

21  there is probable cause to believe that such information will constitute evidence of the crimes under

22  investigation including information that can be used to identify the account's user or users.

23                  **Additional Background Concerning Apple ID and iCloud[2]**

24

25  [2] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process

26  Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud,"

27  available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at

28  https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

41.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

42.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a)     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b)     iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

c)     iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

d)     iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information

1     synchronized across multiple Apple devices.

2     e)     Game Center, Apple's social gaming network, allows users of Apple devices to play

3            and share games with each other.

4     f)     Find My iPhone allows owners of Apple devices to remotely identify and track the

5            location of, display a message on, and wipe the contents of those devices.  Find My

6            Friends allows owners of Apple devices to share locations.

7     g)     Location Services allows apps and websites to use information from cellular, Wi-Fi,

8            Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's

9            approximate location.

10    h)     App Store and iTunes Store are used to purchase and download digital content.  iOS

11           apps can be purchased and downloaded through App Store on iOS devices, or through

12           iTunes Store on desktop and laptop computers running either Microsoft Windows or

13           Mac OS.  Additional digital content, including music, movies, and television shows,

14           can be purchased through iTunes Store on iOS devices and on desktop and laptop

15           computers running either Microsoft Windows or Mac OS.

16    43.    Apple services are accessed through the use of an "Apple ID," an account created during

17    the setup of an Apple device or through the iTunes or iCloud services.  A single Apple ID can be linked

18    to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

19    44.    An Apple ID takes the form of the full email address submitted by the user to create the

20    account; it can later be changed.  Users can submit an Apple-provided email address (often ending in

21    @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email

22    provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services

23    (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification

24    email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue,"

25    and "notification" email addresses) can also be associated with an Apple ID by the user.

26    45.    Apple captures information associated with the creation and use of an¬ Apple ID.

27    During the creation of an Apple ID, the user must provide basic personal information including the

28    user's full name, physical address, and telephone numbers.  The user may also provide means of

AFFIDAVIT                                14

1  payment for products offered by Apple.  The subscriber information and password associated with an
2  Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's
3  website.  In addition, Apple captures the date on which the account was created, the length of service,
4  records of log-in times and durations, the types of service utilized, the status ─of the account (including
5  whether the account is inactive or closed), the methods used to connect to and utilize the account, the
6  Internet Protocol address ("IP address") used to register and access the account, and other log files that
7  reflect usage of the account.

8       46.     Additional information is captured by Apple in connection with the use of an Apple ID to
9  access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a
10 user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and
11 the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a
12 user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query
13 logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating
14 to the use of the Find My iPhone service, including connection logs and requests to remotely lock or
15 erase a device, are also maintained by Apple.

16      47.     Apple also maintains information about the devices associated with an Apple ID.  When
17 a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and
18 identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the
19 device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when
20 the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers,
21 including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"),
22 and the serial number.  In addition, information about a user's computer is captured when iTunes is used
23 on that computer to play content associated with an Apple ID, and information about a user's web
24 browser may be captured when used to access services through icloud.com and apple.com.  Apple also
25 retains records related to communications between users and Apple customer service, including
26 communications regarding a particular Apple device or service, and the repair history for a device.

27      48.     Apple provides users with at least five gigabytes of free electronic space on iCloud, and
28 users can purchase additional storage space.  That storage space, located on servers controlled by Apple,

1   may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail);

2   images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents,

3   spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-

4   Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS

5   device backups, which can contain a user's photos and videos, iMessages, Short Message Service

6   ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history,

7   contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.

8   Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS

9   app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant

10  messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can

11  nonetheless be decrypted by Apple.

12  **IV.      INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

13          49.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in

14  particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple

15  to disclose to the government copies of the records and other information (including the content of

16  communications and stored data) particularly described in Section I of Attachment B.  Upon receipt of

17  the information described in Section I of Attachment B, government-authorized persons will review that

18  information to locate the items described in Section II of Attachment B.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

## V.    CONCLUSION

2       50.      Based on the foregoing, I request that the Court issue the proposed search warrant.

3   Because the warrant will be served on Apple, Inc. who will then compile the requested records at a time

4   convenient to it, reasonable cause to exists to permit the execution of the requested warrant at any time

5   in the day or night.

6

7                                                Respectfully submitted,

8

9                                                _____

10                                               Laura E. Giouzelis
                                                 Special Agent
                                                 Federal Bureau of Investigations

11

12   Subscribed and sworn to before me on: _4/25/2019_____

13

14   _____

15   The Honorable Kendall J. Newman
     UNITED STATES MAGISTRATE JUDGE
16         Carolyn K. Delaney
     U.S. Magistrate Judge

17

18   _____

19   Approved as to form by SAUSA ROBERT J. ARTUZ

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the account(s) with the following email identifiers: canuseeme57@icloud.com, only1daddy4u@icloud.com, and ognunes100@icloud.com, which is/are stored at premises controlled by Apple, Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by** Apple, Inc. **(the "Provider")**

To the extent that the information described in Attachment A is within the possession,

custody, or control of Apple, regardless of whether such information is located within or outside

of the United States, including any messages, records, files, logs, or information that have been

deleted but are still available to Apple, or have been preserved pursuant to a request made under

18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government,

in unencrypted form whenever available, for each account or identifier listed in Attachment A

for the period June 1, 2018 to the present:

a.      All records or other information regarding the identification of the account, to

include full name, physical address, telephone numbers, email addresses (including primary,

alternate, rescue, and notification email addresses, and verification information for each email

address), the date on which the account was created, the length of service, the IP address used to

register the account, account status, associated devices, methods of connecting, and means and

source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in

connection with, the account (including all current and past trusted or authorized iOS devices

and computers, and any devices used to access Apple services), including serial numbers, Unique

Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers

("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers

("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber

Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

      c.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

      d.    The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

      e.    The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

      f.    All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party

apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

The Provider is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence, fruits, instrumentalities of violations of 18 USC §§ 1344 [bank fraud], 1028A [aggravated identity theft], or 1956 [money laundering], and involving Jonathon Ward (aka Johnathon Ward) or Monica Nunes and since June 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)     The identity of the person(s) who created or used the subject account or the corresponding Apple ID(s), including records that help reveal the whereabouts of such person(s);

(b)     Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

(c)     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

(d)     Evidence indicating the account subscriber's state of mind as it relates to the crime under investigation;

(e)     Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts;

(f)     Evidence of the use of an identity not associated with the e-mail address being utilized in furtherance of the violations;

(g)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(h)     Evidence the e-mail user knew that the property of a financial transaction represented the proceeds of some form of unlawful activities and/or attempts to conduct such a financial transaction;

(i)     Records or communications from any financial institution regarding accounts, credit cards, debit cards, merchant accounts, online money transfer services, banks or any financial institution associated with the violations;

(j)     Communications between members of a fraud scheme in furtherance of or discussing the scheme including but not limited members associated with the scheme and fruits of the scheme;

(k)     Any communication with payment processors including but not limited to Worldpay/Vantiv;

(l)     Any communication about merchant numbers including but not limited to sharing merchant numbers and their use in a fraud scheme;

(m)    Any identifying information of merchant processors or merchants including phone numbers, Uniform Resource Locator (URL) associated with the merchant or merchant processor;

(n)     Any evidence of the purchase of acquisition of point of sale terminals and/or their used including but not limited to invoice, payment receipt, and photographs of the point of sale terminal;

(o)     Any communication pertaining to the movement and/or destination of funds obtained through fraud; and

(p)     Any picture in any form showing fruits, evidence, or tools used in the commission of the violations.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| INFORMATION ASSOCIATED WITH ) | Case No. |
| canuseeme57@icloud.com, only1daddy4u@icloud.com, ) | |
| and ognunes100@icloud.com THAT IS STORED AT ) | **2: 1 9 - SW - 3 5 5   CKD** |
| PREMISES CONTROLLED BY Apple, Inc. ) | |
| ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____

*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before   5/9/2019   *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   4/25/2019
                                    1:34 pm

City and state:      Sacramento, California

_____
Judge's signature

~~Kendall J. Newman, U.S.~~ Magistrate Judge
*Printed name and title*

**Carolyn K. Delaney**
**U.S. Magistrate Judge**

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____        _____
Signature of Judge                               Date

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the account(s) with the following email identifiers: canuseeme57@icloud.com, only1daddy4u@icloud.com, and ognunes100@icloud.com, which is/are stored at premises controlled by Apple, Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by** Apple, Inc. **(the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A for the period June 1, 2018 to the present:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

       c.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

       d.      The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

       e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

       f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party

apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

      g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

      h.      All records pertaining to the types of service used;

      i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

      j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

The Provider is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

**II.**      **Information to be seized by the government**

All information described above in Section I that constitutes evidence, fruits, instrumentalities of violations of 18 USC §§ 1344 [bank fraud], 1028A [aggravated identity theft], or 1956 [money laundering], and involving Jonathon Ward (aka Johnathon Ward) or Monica Nunes and since June 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

      (a)      The identity of the person(s) who created or used the subject account or the corresponding Apple ID(s), including records that help reveal the whereabouts of such person(s);

(b)     Evidence indicating how and when the account was accessed or used, to
        determine the chronological and geographic context of account access, use and
        events relating to the crime under investigation and the account subscriber;

(c)     Any records pertaining to the means and source of payment for services
        (including any credit card or bank account number or digital money transfer
        account information);

(d)     Evidence indicating the account subscriber's state of mind as it relates to the
        crime under investigation;

(e)     Evidence that may identify any co-conspirators or aiders and abettors, including
        records that help reveal their whereabouts;

(f)     Evidence of the use of an identity not associated with the e-mail address being
        utilized in furtherance of the violations;

(g)     The identity of the person(s) who created or used the user ID, including records
        that help reveal the whereabouts of such person(s);

(h)     Evidence the e-mail user knew that the property of a financial transaction
        represented the proceeds of some form of unlawful activities and/or attempts to
        conduct such a financial transaction;

(i)     Records or communications from any financial institution regarding accounts,
        credit cards, debit cards, merchant accounts, online money transfer services,
        banks or any financial institution associated with the violations;

(j)     Communications between members of a fraud scheme in furtherance of or
        discussing the scheme including but not limited members associated with the
        scheme and fruits of the scheme;

(k)     Any communication with payment processors including but not limited to
        Worldpay/Vantiv;

(l)     Any communication about merchant numbers including but not limited to sharing merchant numbers and their use in a fraud scheme;

(m)    Any identifying information of merchant processors or merchants including phone numbers, Uniform Resource Locator (URL) associated with the merchant or merchant processor;

(n)     Any evidence of the purchase of acquisition of point of sale terminals and/or their used including but not limited to invoice, payment receipt, and photographs of the point of sale terminal;

(o)     Any communication pertaining to the movement and/or destination of funds obtained through fraud; and

(p)     Any picture in any form showing fruits, evidence, or tools used in the commission of the violations.